### GUS FISCHL v. THE STATE.

No. 3835.    Decided April 15, 1908.

**1.—Forgery—Extradition—Bill of Exceptions.**

Where upon appeal from a conviction of forgery, appellant contended that he was illegally extradited from the Republic of Mexico, and there was no bill of exceptions reserved in respect to the action of the court on this branch of the case, the same could not be considered.

**2.—Same—Indictment—Bill of Lading—Instrument in Writing.**

Where in a prosecution for forgery, the instrument alleged to have been forged was what is known as a bill of lading, which the indictment set out under proper allegations and explanatory averments under article 530, Penal Code, the indictment was sufficient. Following Simms v. State, 32 Texas Crim. Rep., 277.

**3.—Same—Evidence—Intent to Defraud.**

Upon trial for forgery of a bill of lading, evidence was admissible to show

that after defendant forged said bill of lading he drew a draft against the same and obtained money thereon, to show intent to defraud.

**4.—Same—Evidence—Abbreviations—Words and Phrases.**

. Upon trial for forgery of a bill of lading, there was no error in permitting a witness, who was acquainted with the forms of this kind, to explain the abbreviations in the bill of lading and what they meant.

**5.—Same—Variance—Written Instrument.**

Where upon trial for forgery, the indictment set out a certain bill of lading by its tenor, and the bill of lading offered in evidence varied materially from the one set out in the indictment, the variance was fatal and reversible error.

Appeal from the District Court of Williamson. Tried below before the Hon. Chas. A. Wilcox.

. Appeal from a conviction of forgery; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Warren W. Moore, Cochran & Penn,* for appellant.—On question of variance: Cited cases in opinion. On question of insufficiency of indictment: Rollens v. State, 22 Texas Crim. App., 548; 3 S. W. Rep., 360; Crawford v. State, 40 Texas Crim. Rep., 344; 50 S. W. Rep., 378; Booth v. State, 36 Texas Crim. Rep., 600; 38 S. W. Rep., 196.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was indicted in the District Court of Williamson County for the offense of forgery. He was convicted on trial and his punishment assessed at confinement in the State penitentiary for four years.

A preliminary motion in the nature of a plea in abatement was filed setting up in substance that appellant was not amenable to the indictment in this case for the reason that he had been illegally extradicted from the Republic of Mexico. We are unable to pass on this question for the reason that the facts of his extradition do not appear in the record, nor was there any bill of exceptions reserved in respect to the action of the court below on this branch of the case. In the condition of the record before us, the matter is not presented in such way as to be fairly the subject of review by us.

Appellant made a motion to quash the indictment on the ground, substantially, that the instrument alleged to have been forged was not legally the subject of forgery. The instrument alleged to have been forged was what is known as a bill of lading purported to be issued by one Matthews as agent of the Missouri, Kansas and Texas Railway Co. of Texas at Taylor, Texas, and purporting to evidence a consignment by appellant to one A. C. Reed of New York of fifty cases of eggs, said bill of lading, in substance, directing or providing for the shipment of said eggs from Galveston to be made over the Mallory steamship line. Article 530 of our Criminal Code provides, as follows:

"He is guilty of forgery who, without lawful authority, and with intent to injure or defraud, shall make a false instrument in writing, purporting to be the act of another, in such manner that the false instrument so made would (if the same were true) have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever." The bill of indictment in this case is very full and complete, and sets forth the execution of the instrument charged to have been forged, the making of same by appellant, the passing of same, and contains proper explanatory averments as to the meaning of certain terms and abbreviations and marks on the bill of lading, and was evidently drawn in the light of the case of Simms v. State, 32 Texas Crim. Rep., 277, and other authorities in respect to the sufficiency of indictments for forgery decided by this court. We are unable to discover any defect or flaw whatever in the indictment, but on the other hand think it most admirably drawn.

On the trial of the case, the facts show that the defendant after forging the bill of lading in question, took the same to a witness by the name of Cook, and drew a draft payable to Cook for $300 on the City National Bank of Taylor, against Reed with the bill of lading attached, and obtained money therefor. This, as we conceive, was legitimate and proper testimony to prove appellant's intent, and that same was to defraud, and to show that he had executed the bill of lading in question for the purpose of procuring money on same.

Another exception was reserved to the testimony of the witness Matthews as to the meaning of the following words and figures: "50 C. F. Eggs" which was written in the bill of lading. Matthews testified that these words meant and would mean if written in the bill of lading issued by him for the company, fifty cases of eggs were being shipped, and that the words "Mallory Line" would mean that the eggs were to go over the line of the M. K. & T. Ry. Co. of Texas, to the City of Galveston, and then over the Mallory Steamship Line from Galveston to the City of New York. The objection to this testimony was that the jury was just as competent to say what these words meant as the witness Matthews. These words were abbreviations of terms of trade and it was not only proper but essential to an intelligent understanding of the instrument that some one acquainted with forms of this kind and the meaning in the trade of these words, should explain the true intent and meaning of such abbreviations, figures and words used in the instrument, and we can see no force in the objection. The testimony shows beyond a shadow of a doubt the guilt of appellant. The execution of the bill of lading alleged to have been forged, on the faith of which the $300 was obtained, was admitted by Fischl to the witness Matthews, which statement was undenied.

We have carefully examined the various assignments, which, though very highly technical, have nevertheless received our attention, and we  ·

believe that same are without merit. It is, therefore, ordered that the judgment be and the same is hereby in all things affirmed.

*Affirmed.*

ON REHEARING.

June 17, 1908.

RAMSEY, Judge.—In the motion for new trial filed in this cause by counsel for appellant, complaint was made in the eighth paragraph thereof that "the verdict is contrary to the law and the evidence and is not supported by the evidence." On the original submission there was no brief or argument filed on behalf of appellant. In the record there was inserted in the indictment, as a part of it, a printed form of a bill of lading of the Missouri, Kansas & Texas Railway Company of Texas. A like printed form was in the statement of facts which so far as our examination went was identical in every respect with the indictment. On motion for rehearing, however, counsel for appellant call our attention to the fact, which is verified by a critical examination of the record, that there was a substantial variance between the bill of lading set out in the indictment and the one introduced in evidence. The bill of lading copied in the indictment contains the following stipulation:

"And it is further stipulated and agreed that any claim that the shipper, consignor, or consignee may have or prefer against the Missouri, Kansas  and Texas Railway Company of Texas on account of loss or damage occurring on the line of the Missouri, Kansas and Texas Railway Company of Texas shall be presented to some general officer or agent of the said company within ninety days after said loss or damage has been sustained." The stipulation in the bill of lading offered in evidence is as follows: "And it is further stipulated and mutually agreed that any claim that the shipper, consignor or consignee may have against the Missouri, Kansas & Texas Railway Company of Texas on account of loss or damage occurring on its lines, *or on the lines of any of its connecting carriers,* over which this shipment may move by virture hereof, be presented in *writing* to some general officer or agent of said Railway Company within *ninety-one* days after said loss or damage shall have been sustained." It seems to have been universally held that where an indictment undertakes to set out the forged instrument according to its tenor that the strictest proof is required, and that this is furnished only by an exact copy. Such is the holding of this court in the cases of Baker v. State, 14 Texas Crim. App., 332; Edgerton v. State, 70 S. W. Rep., 90; see also Shipman v. Fulcrod, 42 Texas, 248. In the Edgerton case Judge Henderson says: "We understand that tenor imports an exact copy and requires the strictest proof." See also Roberts v. State, 2 Texas Crim. App., 4; Coulson v. State, 16 Texas Crim. App., 189; Thomas v. State, 18 Texas Crim. App., 213; Smith v. State, 18 Texas Crim. App., 399; and Moore v. State, 20 Texas Crim. App., 233. On this same question Mr. Bishop says: "If the indictment professes to set out a written instrument by

its tenor, whether the law has made so exact an averment necessary in the particular case or not, the proof must conform thereto with almost the minutest precision." (1 Bish. Crim. Proc., 3 ed., 488; 1 Whart. Crim. L., 8 ed., No. 737.) Ex parte Rogers, 10 Texas Crim. App., 655 –73; Brown v. The People, 66 Ill., 314. Under these authorities there is undoubtedly a fatal variance between the bill of lading set out in the indictment and that set out in the evidence. This necessitates a reversal of the case. The motion for rehearing is, therefore, granted and the judgment reversed and the cause remanded.

*Reversed and remanded.*